LOLLEY, J.
1 tU Brothers Rent, LTD. (“U Brothers”), appeals the judgment of the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, wherein the trial court dismissed U Brothers’ claim and lien. For the following reasons, we affirm in part and reverse in part the trial court’s judgment and remand for further proceedings.
FACTS
Hawk Field Services, L.L.C. (“Hawk Field”), a subsidiary of Petrohawk Energy Corporation, hired Pioneer Pipeline Services, L.L.C. (“Pioneer”), to construct a pipeline (the “Hawk Field Pipeline”) in Bossier and Red River Parishes. Pioneer hired numerous subcontractors to complete construction on the Hawk Field Pipeline, one of which was Rapid Pipeline. Rapid Pipeline entered into a written contract with U Brothers, in which U Brothers, a heavy construction equipment rental company, agreed to lease heavy equipment to Rapid Pipeline. In turn, Rapid Pipeline orally subleased U Brothers’ heavy equipment to Pioneer. U Brothers’ heavy equipment was used on the Hawk Field Pipeline from November 2008 to February 2009, and U Brothers was paid directly by Pioneer.
On February 11, 2009, U Brothers notified Hawk Field that Pioneer failed to pay U Brothers and owed an outstanding balance of $127,950.67. On March 10, 2009, Hawk Field responded to U Brothers’ claim in a letter requesting additional information. On May 1, 2009, U Brothers filed a lien against the Hawk Field Pipeline pursuant to the Private Works Act, La. R.S. 9:4801, et seq. (“PWA”) and filed its claim on July 22, 2009.
| ¡¡Because U Brothers was not the only party to file a lien on the Hawk Field Pipeline due to Pioneer’s failure to pay, Hawk Field filed a petition for concursus in Bossier Parish. The parties agreed to the appointment of a special master in order to determine the validity of all claims and liens.
The special master submitted a preliminary report in November 2009 which stated that U Brothers did not have a valid claim or lien under the PWA. In response, U Brothers submitted additional evidence and arguments to the special master. Nevertheless, in January 2010, the special master requested that the trial *139 court treat the preliminary report as the final report. The trial court held a contradictory hearing. U Brothers’ counsel was not present at the contradictory hearing; however, an attorney representing another party agreed to speak on U Brothers’ behalf. After the hearing, the trial court adopted the legal conclusions of the report as its judgment and set a trial date for any claims or privileges not determined by adoption of the special master’s findings. This appeal by U Brothers followed.
DISCUSSION

Adoption of the Special Master’s Report

As its first assignment of error, U Brothers argues that both the special master’s report and the trial court’s judgment adopting the report were vague as to their effect on U Brothers’ claim and privilege. U Brothers further argues that the special master’s final report does not reflect acknowledgment of the additional evidence which U Brothers submitted to the special master in response to the special master’s preliminary report. Finally, U Brothers asserts that if the trial court’s judgment acted to dismiss |SU Brothers’ claim and privilege, then .U Brothers’ constitutional and statutory rights have been violated. We disagree.
Louisiana R.S. 13:4165, which governs the use of a special master, states, in pertinent part:
A. Pursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant, the court may enter an order appointing a special master in any civil action wherein complicated legal or factual issues are presented or wherein exceptional circumstances of the case warrant such appointment.
B. The order appointing a special master may specify or limit the master’s powers. Subject to such specifications or limitations, the master has and shall exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties.
C.(1) The court may order the master to prepare a report upon the matters submitted to him and, if in the course of his duties he is required to make findings of facts or conclusions of law, the order may further require that the master include in his report information with respect to such findings or conclusions.
(2) The report shall be filed with the clerk of court and notice of such filing shall be served upon all parties.
(3) Within ten days after being served with notice of the filing of the report, any party may file a written objection thereto. After a contradictory hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions. If no timely objection is filed, the court shall adopt the report as submitted, unless clearly erroneous.
First, U Brothers’ statutory and due process rights were not violated by the trial court’s use of a special master because U Brothers had ample opportunity to participate in the procedure outlined by La. R.S. 13:4165. The record indicates that U Brothers consented to the use of a special master. After reviewing the special master’s preliminary report, U Brothers |4had an opportunity on December 30, 2009, to provide the special master with additional information and arguments. U Brothers also filed a written objection to the trial court’s adoption of the special master’s report. Finally, the trial court held a contradictory hearing on July 9, 2010, at which point U Brothers had an *140 opportunity to object to the adoption of the special master’s findings and present any evidence contradictory to the report. Had U Brothers’ counsel attended the contradictory hearing, many of the questions presented on appeal may have been properly addressed with the trial court. Thus, the record does not reflect a violation of U Brothers’ due process or statutory rights.
Second, the effect of the trial court’s judgment adopting the special master’s report is not ambiguous. The law permits a court to appoint a special master with the power to regulate all proceedings and make findings of fact or conclusions of law. Here, the trial court explicitly instructed the special master to make legal conclusions as to “the validity of the liens, including the proper amount of the lien, and whether the lien is for a lienable claim, in whole or in part, and the proper amount of the claim, both secured and unsecured.” The trial court’s judgment adopting the report was equally explicit where it stated that the findings of the special master “are adopted as the Judgment of this Court, and any claims not recognized therein are set for trial on September 28-29, 2010.” The trial court’s judgment explicitly states that the legal conclusions within the special master’s report shall become the judgment of the trial court.
Third, the special master’s report concerning U Brothers’ claim and privilege is not ambiguous. The special master analyzed and discussed all ^parties asserting lessors’ liens together under the heading “Lessors of Equipment/Sellers of Movables 9:4802(A)(4) AND (3).” Within this section of the report, the special master individually analyzed the claims and privileges of each party with a lessor’s lien. The special master addressed three parties before addressing U Brothers’ claim and privilege, finding that each of the three parties failed to provide Hawk Field with a copy of their lease agreements as required by La. R.S. 9:4802(G)(1). In turn, the special master referenced these findings in its analysis of U Brothers’ claim and lien. This analysis stated, “in addition to the analyses above[,]” obviously indicating that not only did U Brothers not have a valid lessor’s lien for failure to provide a copy of its lease agreement as required by La. R.S. 9:4802(G)(1), but also for the additional reasons provided thereafter. -
For the above reasons, we find that trial court properly relied on the findings of the special master in dismissing U Brothers’ claim and lien, and the adoption of the special master’s report was not in error. Therefore, this assignment of error is without merit.

Validity of U Brothers’ Lien

In its second assignment of error, U Brothers argues that its failure to timely provide Hawk Field with a copy of its lease agreement with Rapid Pipeline should not invalidate U Brothers’ lien. Specifically, U Brothers claims that invalidating its lien for failure to timely , provide Hawk Field with a copy of the lease agreement runs contrary to the purpose of the PWA by allowing a mere technical infraction to leave a claimant unable to secure payment. U Brothers argues further that Hawk Field’s March 10, 2009, letter requesting more information from U Brothers, and the fact that U [ (¡Brothers’ name was visible on the heavy equipment used on the project, evidence Hawk Field’s actual notice of liability to U Brothers and thereby satisfies the notice requirement.
Louisiana R.S. 9:4802, governing which parties may enjoy the statutory privity granted by the PWA, states, in pertinent part:
A. The following persons havé-a claim against the owner and a claim against the contractor to secure payment of the *141 following obligations arising out of the performance of work under the contract:
[[Image here]]
(4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract.
******
G. (1) For the privilege under this Section to arise, the lessor of the movables shall deliver a copy of the lease to the owner and to the contractor not more than ten days after the movables are first placed at the site of the immovable for use in a work. (Emphasis added).
The PWA grants a claimant the right to recover the costs of labor and material from a party with whom there is no contract. That right is in derogation of common rights and must be strictly construed against those to whom the right is accorded. Metropolitan Erection Co., Inc. v. Landis Const. Co., Inc., 627 So.2d 144 (La.1993). Although the interpretation of the PWA is subject to strict construction, strict construction cannot be so interpreted as to permit purely technical objections to defeat the real intent of the statute. Ragsdale v. Hoover, 353 So.2d 1132 (La.App.2d Cir.12/22/77), writ denied, 355 So.2d 263 (La.1978).
Here, the trial court properly held that U Brothers’ failure to provide 17Hawk Field with a copy of its lease agreement invalidated U Brothers’ lien on the Hawk Field Pipeline. The statute makes clear that a lessor must provide the owner with a copy of the lease agreement in order for the privilege to arise. First, U Brothers’ invoices show that the rented equipment was used on the Hawk Field Pipeline from November 2008 to February 2009. U Brothers did not provide Hawk Field with a copy of the lease agreement until February 11, 2009 — well beyond the 10-day time limit set forth by La. R.S. 9:4802(G)(1). The purpose of providing the land owner a copy of the equipment lease is to ensure the land owner is aware that a party without direct contractual privity has a potential privilege on the owner’s land. Such a requirement is not a mere technicality.
Second, the March 10, 2009, letter from Hawk Field acknowledging U Brothers’ claim does not prove that Hawk Field had actual knowledge of U Brothers’ equipment on the work site within 10 days of the equipment’s arrival. The letter merely responds to U Brothers’ claim sent on February 11, 2009. Furthermore, U Brothers’ insistence that the labeling of its equipment provided Hawk Field with sufficient knowledge of its liability to U Brothers ignores the fact that under U Brothers’ rendition of the law, the presence of rented equipment on virtually any work site would render the requirement of La. R.S. 9:4802(G)(1) irrelevant. The record does not support a finding that Hawk Field had actual knowledge that circumvented the necessity for strict adherence to the law; therefore, the trial court properly determined that U Brothers’ lien was invalid for failure to adhere to La. R.S. 9:4802(G)(1).

Validity of U Brothers’ Claim

Is As its last assignment of error, U Brothers argues that even if it does not have a valid lien on the Hawk Field Pipeline, it still has a claim against Hawk Field. Specifically, U Brothers argues that because the language of La. R.S. 9:4802(G)(1) refers only to the privilege securing the owner’s personal liability, failure to satisfy this additional notice requirement should affect only the privilege granted by La. R.S. 9:4802(B) and not the claim granted by La. R.S. 9:4802(A). We agree.
*142 The PWA affords two basic rights to a subcontractor. C & S Safety Systems, Inc. v. SSEM Corp., 2002-1780 (La.App.4th Cir.03/19/03), 843 So.2d 447. First, La.R.S. 9:4802(A)(4) grants a claim against the owner and a claim against the contractor to secure payment for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract. Second, La. R.S. 9:4802(B) grants a privilege on the immovable to secure the claim granted by La. R.S. 9:4802(A). The comments to La. R.S. 9:4802 make clear that “the privilege given under this section is accessory to and only secures the personal liability of the owner imposed by Subsection A.” (Emphasis added).
Louisiana R.S. 9:4823(A) governs the ex-tinguishment of claims and privileges and states, in pertinent part:
A privilege given by R.S. 9:4801, a claim against the owner and the privilege securing it granted by R.S. 9:4802, or a claim against the contractor granted by R.S. 9:4802 is extinguished if:
(1) The claimant or holder of the privilege does not preserve it as required by R.S. 9:4822; or
(2) The claimant or holder of the privilege does not institute an. action against the owner for the enforcement of the claim or privilege within one year after the expiration of the time given [ 9by R.S. 9:4822 for filing the statement of claim or privilege to preserve it[.] (Emphasis added).
Louisiana R.S. 9:4822 governs the preservation of claims and privileges and states, in pertinent part:
C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and'privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:
(1) The filing of a notice of termination of the work[.]
A claimant who does not have a contract with the owner and who fails to file a lien or statement of claim within the time period provided by law cannot recover from the owner for services performed or materials supplied. Newt Brown v. Michael Builders, 569 So.2d 288 (La.App.2d Cir.10/31/90), writ denied, 572 So.2d 91 (La.1991).
Here, U Brothers timely filed a statement of its claim and lien as required by La. R.S. 9:4822, but failed to provide a copy of the lease agreement to Hawk Field as required by La. R.S. 9:4802(G)(1). While it is undisputed. that the requirement of La. R.S. 9:4822 applies to the preservation of both a claim and privilege, the language of La. R.S. 9:4802(G)(1) clearly indicates that its notice requirement is only necessary to give rise to the privilege securing the claim. Any effort to include the notice requirement of La. R.S. 9:4802(G)(1) within the filing requirement of La. R.S. 9:4822 would go beyond the language of the statute: Had the Louisiana Legislature intended La. R.S. 9:4802(G)(1) to apply to both the claim and privilege, it would have included the word “claim” just as it did for La. R.S. 9:4822. Furthermore, the comments' to La. R.S. 9:4802 indicate | ,na legislative desire for the preservation of a claim absent a lien by making abundantly clear that the privilege granted by La. R.S. 9:4802(B) “is accessory to and only secures the personal liability of the owner imposed by Subsection A.”
The special master cited Newt Brown as holding that a claim and lien are extinguished by failure to comply with La. R.S. 9:4802(G)(1); however, that case is distinguishable from the present case. In Newt *143 Brown, the claimant failed to satisfy the notice requirement set forth by La. R.S. 9:4822(B). The court in Newt Brown, never considered the effect of a claimant’s failure to comply with La. R.S. 9:4802(G)(1). While we agree that both U Brothers’ claim and lien would be extinguished had it failed to file a statement of claim and lien within the time period required by La. R.S. 9:4822, here, it is undisputed that U Brothers filed its statement of claim and lien within the window set forth by La. R.S. 9:4822. Therefore, we find that the trial court erred in finding that U Brothers’ claim against Hawk Field was extinguished.
CONCLUSION
For the foregoing reasons, we affirm that part of the trial court’s judgment in favor of Hawk Field regarding the validity of U Brothers’ lien. As to the portion of the judgment regarding U Brothers’ claim, we reverse in favor of U Brothers and remand for a determination on the surviving claim. Each party will bear its own costs on appeal.
AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.
SEXTON, J. Pro Tern., concurs in the result regarding U Brothers’ “lien” and agrees with opinion as to U Brothers’ “claim”.